The next matter on our calendar is United States of America v. Frank Mercedes. I need a little more, thanks. Thanks. Thank you. Good morning, your honors, and may it please the court. Mr. Mercedes was convicted based on the testimony of one witness. That witness, Mr. Velas Gomez, testified as to . . . Were you trial counsel? I was not. Okay, but you know trial counsel had an opportunity to cross-examine this witness as to his credibility and as to his testimony in other trials, isn't that correct? That is correct. And the jury heard all that and decided that he was still credible? The jury heard all of that, but there is a point, your honor, at which I believe testimony can be so diametrically different from one proceeding to the next that a new trial motion, which is granted, I concede, in the rarest of circumstances, should be granted in certain cases. In page eighteen of our brief, we have laid out the testimony of Mr. Velas Gomez at the two trials, and there were essentially two meetings, which one . . . and really the initial meeting at which the conspiracy was formed, at which an agreement was reached or not. And as to that key meeting, the testimony was different at the two trials. At one trial, the initial trial, which is of Mr. Mercedes' co-defendant, the witness Mr. Velas Gomez testified, he changed the plan, but we looked at each other and Muffler, one of the co-conspirators, simply made a gesture and gave the okay. That testimony changes at the second trial to, well, we all had to step out of the van and talk about and discuss whether we were going to go forward with what was essentially a very different plan, escalating the plan from one of simply kidnapping to an actual hit. That change seems to me, Your Honor, to be so different and so unusual that in the particular circumstances of this case, which included a jury reporting itself deadlocked on two occasions, the new trial motion should have been granted. In addition to that, the witness testified that there was another meeting after the shooting at a time that we contend, although there's nothing in the trial . . . there's no trial evidence that Mr. Mercedes was out of the United States and in the Dominican Republic. Counsel, I ask you again, didn't the jury hear these very issues about Mr. Mercedes' absence and whether there was a meeting outside the car or not? Wasn't Mr. Velas Gomez cross-examined extensively on these very issues? He was cross-examined extensively on the first issue as to the different testimony at the prior trial. He was not cross-examined as to the second issue. The issue that counsel had there was that the evidence that Mr. Mercedes was out of the country from July 16th onward did not make it into evidence. There's a document at docket number 181-2, which we have at page 88 of the joint appendix, where he gave a statement years ago in which he said he told officers I was out of the country from July 16th on. His counsel tried to get a passport in, which bore a stamp which would have reflected that and was unable to get a witness from the consulate to authenticate that and didn't want to put his client on the stand. I think the government will argue that they have doubts as to the authenticity of the passport stamp and they vigorously opposed that at trial, opposed the admission of that at trial. But nevertheless, it creates yet another concern about this witness. And finally, the witness testified that they were all paid even though they shot and killed the wrong person. I have a question that really is primarily for the government, but I'm going to ask you about the record. Did the government ever prove that Mr. Mercedes knew that the people he allegedly hired were going to use a firearm? That's the 924 count. Yes. The answer to that question is no. They never proved that at all. I think in their brief they don't. They relied on the fact that he may have known or it was generally known, I will ask for a specific response, that this crew committed robberies with guns, generally. That was their line of business, shall we say. Yes. But that alone, and I think we cite the Giraldo case in our brief from this court as establishing that you need more to prove aiding and abetting. Well, you need to prove under Rosemond Mr. Mercedes' knowledge. Yes, exactly. And I didn't see that they did anyway. They did not. And we argued that in point three of our brief. Were they impersonating a cop? No, not. There was some evidence of that. There was evidence that they had done that previously, that that had been an M.O. But in this particular case, there was testimony from the victim of the shooting that he thought it might be a police officer behind him. He had a vest on. Yes. It looked like a cop vest. That was the testimony, I believe, Your Honor. On the other occasion, when he looked like a cop with a cop vest, he used a gun. Well, there were other occasions on which they used guns. Isn't that similarity enough for a jury to infer that on this occasion, since he put on the vest and he's trying to look like a cop and cops have guns, if he looked like that on the previous occasion and was dressed the same way here, he probably also had the same weapon? No, it's not sufficient, Your Honor, because On this occasion, he said, I'm going to kill him with a knife or a poison pill or something? On this occasion, Mr. Mercedes, there was no discussion of how the murder was to take place. How did he look? He had the vest. That was at the shooting, but Mr. Mercedes was not present there. I understand, but he's aiding and abetting a killing with a gun. And the question is, is he responsible for a killing with a gun? That's the question. Is he aiding and abetting a killing with a gun? We need to know whether he's liable. There's enough evidence for the jury to think, since he's hiring people who on a previous occasion looked like a cop, had a vest, and had a gun, and on this occasion had a vest, looked like a cop, and had a gun, whether that's sufficient. That is not sufficient. Why is that not enough? Because there was no discussion as to this specific occasion as to how they were going to. You have to address, you have to prove. This is in fact how they looked. But he, in his meeting with them, it's not how they look. In his meeting with them, he's in a van with them, and there's a discussion. Previous robbery? He knew they were robbers, generally. He didn't know they were armed robbers? I'm sure he knew they were armed robbers. But the question is, did he know in this, we don't convict people generally. We have to have specific proof in this instance that he aided and abetted this use of a firearm. Was the advanced knowledge requirement contemplate proof beyond a reasonable doubt? Is it an element? One has to have proof beyond a reasonable doubt that under this Court's decision in Gerardo that he was aware that a firearm would be used in this instance. And that's what we're relying on. I haven't addressed the Allen charge argument. We'll rely on our brief for that. But I simply say that the jury twice reported itself deadlocked. They received an Allen charge on Thanksgiving week. And that should not have happened. Thank you. I have reserved a minute for a moment of counsel. We'll hear from the government. Good morning. May I please the Court? My name is Rebecca Donaleski. I'm an Assistant United States Attorney in the Southern District of New York. I represent the United States on appeal. And I also represented the United States in the proceedings below. Counsel, could you show me where you put into evidence Mr. Mercedes' knowledge that a gun would be used at this killing? Yes, Your Honor. So first I'd like to remind the Court as the Court is of course aware that as an initial matter the Court is required to view all of the evidence in conjunction. So I'm going to point to six pieces of evidence from which a jury could have reasonably inferred that Mr. Mercedes had advanced knowledge. Beyond a reasonable doubt. Exactly, Your Honor. But in considering these, the Court is required to consider them in conjunction. Not each in isolation, but in conjunction. And taking every inference in the government's favor and in support of the jury's verdict. So in light of that standard, I'd like to go through those pieces of evidence now. So first, Mercedes, and one second point I'd like to make to Your Honor's point. There's no requirement that Mr. Mercedes be explicitly told I am going to use a gun to commit this murder. The jury was reasonably able to make inferences based on the evidence that he knew. Rosman says he has to know. Exactly, Your Honor. He has to know. Exactly. Not infer. He has to know in order to be charged with the 924 crime. You agree with that? We agree with that, Your Honor. But Rosman doesn't say Mercedes needs to be verbally told that a gun will be used? He just has to know it. Exactly. So those pieces of evidence are as follows. First, Mercedes was the architect of this plan. He wasn't the lookout. He wasn't a bit player. He was the man that hired a hit team to perpetrate this murder. Doesn't show advanced knowledge. What else do you have? Your Honor, the reason that a jury could infer from this advanced knowledge is that Mr. Mercedes specifically selected a hit team of armed robbers that had a specific MO of impersonating police officers. Velas Gomez testified that at the time of the murder, he and the other members of the hit team had perpetrated 35 to 40 armed robberies all using the same MO. Mercedes selected this team and they actually perpetrated the murder in this exact way. The jury could reasonably infer from the fact that Mercedes organized the murder, selected the hit team, and the murder happened the way the hit team's MO was that Mercedes intended the murder to happen that way. The second piece of evidence is that Mercedes went outside his own organization to select the hit team. Mercedes didn't tell his worker, go out and find me a murder for hire crew. Mercedes selected these men by hand because he was aware of their reputation as armed robbers with this very specific MO. Third, Mercedes and Guerrero were drug dealers. They knew each other beforehand. It was reasonable for the jury to infer from Mercedes' prior relationship, prior drug relationship with Guerrero, that he was aware of the hit team's reputation as armed robbers with this specific MO. I don't think that meets the Rosemont test, that little piece. Certainly, Your Honor, but the jury was presented with all of these evidence. I'm presenting all of the pieces of evidence from which the jury could have reasonably inferred. Again, the court is viewing this in conjunction that Mercedes had knowledge. The fourth piece is that there was no evidence that anyone in this conspiracy used anything other than guns. The hit team, at the time of the murder, had so many guns that they had to send 15 to 20 guns back to the Dominican Republic. Mercedes' stash houses, when they were searched and when they were robbed by Rosario, there was no evidence that anything other than guns were found in Mercedes' stash house. Mercedes and the members... Who has weapons. Exactly. There were no knives found. There were no bombs found. There were only guns found in Mercedes' own stash houses. And similarly, Vélez-Gómez testified that he and the hit team used guns. They didn't bomb people. They didn't stab people. They didn't give people poison pills. They used guns. It was reasonable for the jury to infer from this piece of evidence that when Mercedes hired men to kill Rosario that he knew that guns would be used. Although, originally, he hired them only to take back his stuff. And for that, you would not need guns. Your Honor, I'd like to make one factual clarification to that point. So what Vélez-Gómez testified is that Mercedes told Guerrero, because the two men had previously known each other, that someone had stolen a kilogram of heroin from him and that he wanted that person grabbed to get his stuff back. Vélez-Gómez testified that grabbed meant an armed robbery. You don't just pick someone up off the street, Vélez-Gómez testified. You need a gun to intimidate them to go with you. So that was what Vélez-Gómez testified the original understanding of the job was. And again, this was the perfect hit team to accomplish that. That was what they did. They used guns and impersonated cops to commit armed robberies of drug dealers. So that was their understanding going to that initial meeting of what Mercedes wanted. But then Vélez-Gómez testified that Mercedes changed the plan. He said that he wanted Rosario killed. So again, from the testimony regarding this crew's specific MO and the fact that Mercedes went out and specifically picked these men to commit this murder, the jury could have inferred that Mercedes knew how the murder would take place. He knew that they would commit the murder in the exact same way that they committed all of the other armed robberies of drug dealers. Did the summations frame the issue of whether the defendant whether the jury could infer that the defendant knew the hit men would use guns? Your Honor, Mercedes' defense at trial was that he had nothing to do with this. So the government's argument necessarily discussed many of the points that we're making here. There was no fallback position. He didn't know, but if he did know, he wasn't aware that guns would be used. There was no fallback position. That's exactly right, Your Honor. The government argued using all of these pieces of evidence that Mercedes was the architect of this plan that he went out and specifically selected these men that he knew would do the murder in a way. Rule 29 motion at the end of the government's case. I believe there was, Your Honor. In making that motion, did the defendant say the reason there isn't a sufficient case is because there's insufficient evidence to support the inference that a gun was used? I don't recall that argument being made. So this whole issue wasn't really it wasn't raised to the judge and it wasn't raised to the jury? That's correct, Your Honor. It's only raised to us. That's correct, Your Honor. The last piece in walking through the pieces of evidence from which a jury could have reasonably inferred that Mercedes knew is some of Mercedes' actions after the murder. And of course these are appropriate for instance in a 404B analysis if evidence that happens after the crime sheds any light on the defendant's intent or knowledge before the crime it's entirely reasonable for the jury to make those inferences. It couldn't tell us what he knew at the time of the crime anything that happened afterwards. Your Honor, respectfully the jury could have inferred the defendant's knowledge based on events that happened after the crime and let me speak about that specifically. The problem I'm having and maybe you can address it is that this approach by the government in this particular case just seems to me to eviscerate what the Supreme Court instructed in Roseman. I mean your argument seems to be that one plus one plus one plus one all of a sudden equals ten. Your Honor, first the facts here are very different from Roseman.  Mercedes himself was the architect of the plan. I'm not worried about the facts of Roseman. In Roseman was a dealt with a very specific issue that had previously come up under 924 which 924C which is what do you have to prove to get a conviction under that statute. It's quite clear that he had to have advanced knowledge that one of his Confederates would carry a gun. That seems to me a very specific requirement and it seems to me and correct me if I'm wrong if I'm missing something that's different from an argument which is the one I understand you making that the circumstances in their totality strongly suggest that he knew it. Your Honor it's not simply that they strongly suggest it's that viewed in conjunction and that they do prove beyond a reasonable doubt and they do support the jury's inferences that Mercedes knew beyond a reasonable doubt that a gun would be a firearm. I'm happy to discuss the defendant's first two points unless your Honor has any questions otherwise we'll rest on our papers. Thank you counsel. Thank you. Mr. Levchuk you reserved one minute for rebuttal. I did Your Honor and I have to say I was anxiously waiting for those six points   beyond a reasonable doubt. I have an interesting rhetorical argument to say we have those six points but we have no evidence. Her argument is those six points are the evidence that support an inference. They support an inference but do not add up. It's always going to be an inference. We don't have an x-ray into his head so it's always an inference. But the inference has to be proven beyond a reasonable doubt. That's quite true but to put those six points aside is a bit of an issue. The reason I want my motion granted is because there's insufficient evidence to support an inference.  requirement if you're going to say to a judge this case is insufficient don't you think you ought to point out the insufficiency? I think the motion that was made was sufficient. Just to say it's insufficient so now the evidence is insufficient to establish the elements of these crimes beyond a reasonable doubt. I thought the theory of making that motion at the end of the case  a reasonable doubt. I don't think that's the reason for a respectfully judge rule 29. Most rule 29s made at the close of a government case are not argued extensively. Well, that's right. The reason for that is because the government has clearly sufficient evidence. That's the reason the problem doesn't come up. But in the rare case where the defendant says wait a minute, there is one little piece missing, then I would have thought it's raised. I think he was more focused on the murder. I think so too. If I could make one final point, I would just direct the court to the same standard that the accomplice must know to a practical certainty that a firearm would be used. I would urge the court to adopt that same standard. Thank you, counsel. Thank you, both. Thank you.